ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS V. G. M. FRANKS.

Decided December 12, 1908.

**Railroads—Carrying Passenger beyond Destination—Damages—Contributory Negligence.**

Plaintiff and his wife were passengers on defendant's railway train, and were wrongfully carried beyond their destination and caused to alight at the next station, a distance of three and a half miles from their home; there was no train returning to their own station until the next morning; the wife was not feeling well; hotel accommodations could have been secured at the station where they alighted, but no effort was made to find them; the plaintiff and his wife determined to and did walk back to their home, whereby the illness of the wife was aggravated and she suffered mental and physical pain. Held, whether or not the wife was guilty of contributory negligence in undertaking the walk, under all the circumstances, was a question of fact for the jury, and the court properly refused to instruct a verdict for the defendant.

Appeal from the District Court of Navarro County. Tried below before Hon. L. B. Cobb.

*E. B. Perkins, Daniel Upthegrove* and *R. S. Neblett,* for appellant. —The evidence shows without conflict that the wife of appellee acted without common prudence in refusing to stay at Purdon when she and appellee were discharged from appellant's train, and in walking three and a half miles to her home in Jester, and the court should have so instructed the jury, and should have granted a new trial upon the finding of the jury to the contrary. If the wife of appellant suffered any injury the negligence of appellant was not the proximate cause of such suffering, but it was due to her own negligence. Texas & P. Ry. Co. v. Cole, 66 Texas, 562; St. Louis S. W. Ry. Co. v. Thomas, 27 S. W., 419; International & G. N. v. Addison, 97 S. W., 1038.

*Dexter Hamilton,* for appellee.

RAINEY, CHIEF JUSTICE.—Franks, the appellee, sued the railway company, appellant, to recover damages resulting to himself and wife by being carried beyond their station while they were passengers. The petition, in substance, alleged that appellee and his wife boarded appellant's train at Corbett with tickets entitling them to passage and transportation to Jester; that the conductor took up the tickets, and that he refused to stop the train at Jester and carried them beyond to Purdon, a distance of three and a half miles from their destination; that appellee and his wife alighted at the station of Purdon, and were forced to walk from Purdon back to Jester, by reason of which the plaintiff suffered mental distress and agony; that he was abused by the conductor and suffered worry, distress and humiliation on that account.

Defendant answered by general demurrer, general denial and by plea of contributory negligence, etc.

A trial resulted in a verdict and judgment for $250. A motion for new trial being overruled, the railway company brings the case here for review.

The evidence shows that Franks and wife being at Corbett, a station on appellant's road, bought tickets entitling them to transportation over said road to Jester, their home. They boarded the train at Corbett and the conductor took up their tickets. In passing Jester, Franks, seeing the train was not going to stop, went to the conductor of the train and asked him to stop. The conductor said he would not stop unless he had tickets or had collected cash fare; Franks told him he had tickets which had been taken up. The conductor then said, "You had no tickets," and Franks replied, "I did, and you took them up." The conductor said, "You didn't do any such damn thing." Franks said, "Well, I want you to let me off; I want you to back up to the station," and he said he wouldn't do it. Franks said, "If he couldn't do it, I could, and I stepped back and reached hold of the bell cord, and he came dashing in there and ran against me, and 'sorter' pushed me around and said, 'What are you doing?' I told him it was my intention to stop the train. He told me it was strictly a penitentiary offense I had committed, and I would answer for it. . . . I let the bell cord alone. The conductor said, 'You are not going to get off until you get to Purdon.' He then turned around to some of the passengers there and told them to remember that I pulled the bell cord; that something might come up about it. His manner and language towards me was rough and angry, and that was kinder humiliating and embarrassing to me; it made me feel bad; I felt like I was kinder being abused where I had to take it."

Franks and wife disembarked at Purdon, the next station, a distance of three and one-half miles from Jester. At Purdon Franks used ordinary care and prudence to secure for himself and wife transportation back to Jester, but his efforts were unavailing. It was a pleasant June evening about dusk when they arrived at Purdon, and not being able to get transportation before next morning, when a train would pass back to Jester, and it being necessary for Franks to be at Jester that night to get a report and the mail ready for next morning, he being then postmaster, he decided to walk to Jester. Some discussion was had between them about the wife spending the night at Purdon, she not being very well. After considering the matter she concluded to take the walk. They were perfect strangers at Purdon and knew nothing of the surroundings. It was a small place, and a lady kept a boarding place where transient persons often stopped, but this was not known to Franks and wife. They never made any effort to ascertain the situation, as Mrs. Franks was unwilling to remain without her husband, so they proceeded to walk from Purdon to Jester, arriving home about 10:30 o'clock that night. They rested several times on the way and the wife suffered mentally and physically by reason of the walk, was sick next day and required medicine, and the same medicine that had been theretofore prescribed by a doctor was secured. Mrs. Franks was sick that evening, had a "terrible headache."

Jester is a flag station at which through trains did not stop. Train

No. 3, the train on which Franks and wife took transportation, stopped there whenever a passenger had tickets or paid fare.

The appellant complains of the overruling of its motion for a new trial, as the verdict is not supported by the evidence, in that the evidence shows that plaintiff's wife was guilty of contributory negligence precluding recovery in walking from Purdon to Jester, a distance of three and one-half miles, while sick, and in not procuring hotel accommodations at Purdon for the night and thereby avoiding any injury resulting from the walk. Also, the refusal to give, in this connection, a special charge requested, as follows: "You are instructed that the testimony of Mrs. Franks, the wife of the plaintiff in this case, shows that she declined to stay in Purdon after she disembarked from the train and that she so informed her husband. Now, if you believe from the evidence that Mrs. Franks or her husband, the plaintiff in this case, could with ordinary care have secured a comfortable hotel or lodging house at Purdon for the night for her, and could have returned to Jester the next morning, then the only damages for which the company would be liable would be the reasonable cost of hotel and lodging house for the night, and transportation from Purdon to Jester the next day. In this case the plaintiff does not claim such damages, and therefore insofar as Mrs. Franks is concerned, the plaintiff can not recover in this case."

The evidence shows that Franks and wife made no effort to procure accommodations for the night, and that had they done so accommodations could have been procured and the damages resulting from the walk could have been avoided.

The charge asked, in effect, tells the jury as a matter of law, that the failure to procure accommodations for the night at Purdon precluded a recovery for damages resulting from the walk. Was the charge correct under the circumstances of this case? Or was it a question for the jury, as submitted by the court for them to determine, whether the walking home was the proper and careful thing for them to do, that is, an act that persons of ordinary prudence would commonly do under like circumstances, etc.?

They had boarded defendant's train together, holding tickets entitling them to transportation to their destination, Jester, their home. The company's agent had taken up those tickets, but, without cause, had breached the contract by wilfully failing to allow them to disembark at Jester and carrying them to Purdon, three and one-half miles beyond, a small place, where they were strangers. Franks felt that it was necessary for him to return home that night, and the distance was not so great as to produce any apprehension of injury resulting to him, if he should undertake it. How as to the wife? It was natural for her to dread being left there to stay among strangers without her husband; although she was not well, she concluded she could make the walk by resting along the way without any detriment to herself. Under these circumstances can it be said as a matter of law that she was guilty of negligence? We think not. The question was properly submitted to the jury. (St. Louis S. W. Ry. Co. v. Ricketts, 96 Texas, 68; St. Louis S. W. Ry. Co. v. Foster, 46 Texas Civ. App., 517.)

Complaint is made that the court erred in instructing the jury, in effect, that damages, if any, were recoverable for mental and physical suffering of the wife caused by walking from Purdon to Jester, when there was no allegation of mental and physical suffering of the wife caused by such walking.

The petition on which the case was tried contained the following allegations with reference to mental and physical suffering, viz.: "Plaintiff also shows to the court that on the said June 30, 1907, his wife had a chill while at Corbett, and that she was suffering with a fever while a passenger on defendant's train returning from Corbett, when she arrived at Purdon and while she was walking from Purdon to Jester, a distance of three and one-half miles. Plaintiff would further show to the court that his wife had previously been under treatment for a bladder disease, and also for a heart disease, and that by reason of the cruel and unlawful conduct of the conductor aforesaid, she was compelled to suffer increased anguish and physical pain, for the relief of which plaintiff on the following day secured medicine prescribed by a physician. Plaintiff also says that he was intimidated and suffered great mental anguish by reason of the conduct of the said conductor, as above set forth, and by reason of the abusive and insulting language used by the conductor, as well as on account of the physical suffering, humiliation, mortification and mental anguish to which his wife was subjected as a result of the same." Preceding these allegations the facts relating to the buying of tickets, the boarding the train, the refusal of the conductor to stop the train at Jester when they were ejected, and the conduct of the conductor in the premises, and the wife's walking from Purdon to Jester, were all stated. Considering these allegations with those quoted above, that is, construing the petition as a whole, we think the defendant was notified that a recovery would be sought for the mental and physical suffering of the wife resulting from the walk; especially so as no exception to the petition for more specific allegations were presented to the court.

The other assignments presented have been considered, but none, in our opinion, warrant a reversal.

The judgment is affirmed.

*Affirmed.*

Writ of error refused